BEFORE THE SECOND DIVISION, JUNE 6, 1960

**No. 64266.**—Pongees Corp. et al. *v.* United States, protests 133032–K, etc. (New York).

FORD, Judge: The protests listed in schedule "A," annexed hereto and made a part hereof, were consolidated for purposes of trial and covered certain imported silk fabrics, which were assessed with duty at the rate of 55 per centum ad valorem under the provisions of paragraph 1205, Tariff Act of 1930, as woven fabrics in the piece, wholly or in chief value of silk, not specially provided for.

Plaintiffs, by their protests, claim that the merchandise should be classified as woven fabrics in the piece, with fibers wholly of silk, bleached, valued at more than $5.50 per pound, and assessed with duty at the rate of 45 per centum ad valorem, under the provisions of paragraph 1205 of the Tariff Act of 1930, as modified by the trade agreement with France, 69 Treas. Dec. 853, T.D. 48316, or at 25 per centum ad valorem under said paragraph 1205, as further modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, depending upon the dates of entry.

THE STATUTES

Paragraph 1205, Tariff Act of 1930, insofar as pertinent here, provides as follows:

Woven fabrics in the piece, wholly or in chief value of silk, not specially provided for, 55 per centum ad valorem; * * *.

Paragraph 1205, Tariff Act of 1930, as modified by the trade agreement with France, 69 Treas. Dec. 853, T.D. 48316, provides as follows:

Woven fabrics in the piece, with fibers wholly of silk, bleached, dyed, colored, or printed, * * * valued at more than $5.50 per pound_____ 45% ad val.

Paragraph 1205, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, provides as follows: Woven fabrics in the piece, the fibers of which are wholly of silk, bleached, printed, dyed, or colored, * * * valued at more than $5.50 per pound_____ 25% ad val.

The record in this case consists of the testimony of one witness called on behalf of the plaintiffs and eight exhibits. The witness testified that, prior to 1950, he was associated with Pongee Corp. as sales manager; that his duties also included the purchase of merchandise in the Far East; that, since 1950, he was associated with another silk importing firm; that he was familiar with various kinds of silk from both the Orient and Europe; that, in the course of his travels and visits to the various countries, he had occasion to observe the manufacture and production of silk fabrics of various kinds.

The witness then identified a document listing certain court case numbers, dates, and a description of the merchandise covered by each of the cases, which was received as plaintiffs' exhibit 1. The witness testified that he was familiar with the various items enumerated on exhibit 1, which were all boiled-off silks; that he had seen silk piece goods, such as those listed in exhibit 1, before they were boiled off and while they were still in the gum; that he had observed the difference between them in the raw and after boiling; that, as a result of being subjected to the boil-off process, the gum was removed and the silks became softer and substantially lighter in color. The witness stated that he was familiar with the case of *United States* v. *C. M. Gourdon, Inc.*, 43 C.C.P.A. (Customs) 4, C.A.D. 601, involving boiled-off silks from Brazil. The witness then examined exhibits 1 and 3 in the *Gourdon* case, *supra*, and testified that exhibit 1 was a boiled-off fabric, while exhibit 3 was in the gum. At this point, exhibits 1 and 3 in the *Gourdon* case, *supra*, were received in evidence as plaintiffs' collective exhibit 2 in the instant case.

Upon questioning by the court, the witness testified that his understanding of the word "bleached" would be changing the color of the silk substantially to a lighter color, since all silk has a yellowish cast, even with bleaching. Upon being shown a piece of fabric, the witness identified it as boiled-off Honan silk, which was received in evidence as plaintiffs' exhibit 3. It was subsequently stipulated by and between counsel for the respective parties that exhibit 3 was representative of all the items enumerated on exhibit 1, except for the items covered by protests 134436–K, 133318–K, 148137–K, 149851–K, 164122–K, and 132387–K, whether described as Hangchow, Nanshan, Pongee, Honan, or Antung, with or without qualifying words or description. A sample of another piece of silk was received in evidence as plaintiffs' exhibit 4, which the witness stated was the same Honan silk, before it had been boiled off. The witness then testified that exhibit 3, the boiled-off silk, was much softer and had become much lighter

in color than exhibit 4; that, in comparing plaintiffs' exhibits 3 and 4 with plaintiffs' collective exhibit 2, the fabrics in the gum in both instances were darker in color before they had been boiled off.

A sample of knopped spun silk, which had been boiled off, was received in evidence as exhibit 5 and was stated to be representative of the merchandise covered by protests 134436–K, 133318–K, 148137–K, 149851–K, 164122–K, and 132387–K. Another piece of silk cloth was received in evidence as plaintiffs' exhibit 6, which the witness stated was the same fabric as exhibit 5 before having been boiled off; that, comparing exhibits 5 and 6, he found that exhibit 5 had become lighter in color and the dark spots had been removed as compared with exhibit 6.

At this point, it was stipulated by and between counsel for the respective parties that the items enumerated on exhibit 1 consist of fabrics in the piece, with fibers wholly of silk, valued at more than $5.50 per pound.

The Government offered and there were received in evidence as defendant's exhibits A and B, samples of silk crepe before the boil off.

Based upon this record, plaintiffs contend that it is established that the imported silk fabrics are bleached and, therefore, entitled to the reduced rate of duty under the trade agreements. The question presented to this court of what constitutes bleached silk is not a new or novel question. *United States* v. *C. M. Gourdon, Inc.*, 43 C.C.P.A. (Customs) 4, C.A.D. 601; *Armand Schwab & Co., Inc* v. *United States*, 32 C.C.P.A. (Customs) 129, C.A.D. 296; *Walter Strassburger & Co., Inc.*, et al. v. *United States*, 26 Cust. Ct. 210, C.D. 1326.

Our appellate court, in the *Gourdon* case, *supra*, made the following observation with respect to the word "bleached":

* * * It is clear that the term "bleached" does not require the removal of all color but that, as was held in *Armand Schwab & Co., Inc.* v. *United States*, 32 C.C.P.A. (Customs) 129, C.A.D. 296, "the removal of color to any substantial degree must be considered as coming within the common meaning of the term 'bleached'." Accordingly, so far as the actual change in color is concerned, the fabric here involved satisfies the requirement as to being bleached. * * *

The court, after considering lexical information concerning silk, silk degumming, and silk bleaching, concluded as follows:

It is clear, therefore, that the degumming process to which the silk here involved was subjected was not merely a washing but served to remove a substantial part of the raw silk itself, which part included the greater portion of the coloring matter. In our opinion such a removal of color properly responds to the term "bleaching."

Accordingly, the law is well settled that the removal of color to a substantial degree brings the silk within the common meaning of the term "bleached." An examination of exhibits 3, 4, 5, and 6 establishes to our satisfaction that there has been a substantial removal of color by the degumming process and that said silk is bleached within the common meaning of that term, as determined by our appellate court.

Viewed in the light of the foregoing authorities and based upon the record as made herein, we are of the opinion that the merchandise in question consists of woven fabrics in the piece, with fibers wholly of silk, bleached, valued at more than $5.50 per pound, and is, accordingly, properly dutiable at the rate of 45 per centum ad valorem or 25 per centum ad valorem under paragraph 1205 of the Tariff Act of 1930, as modified, *supra*, depending upon the dates of entry.

To the extent indicated, the specified claim in these suits is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.